425 So.2d 907 (1983)
AUDUBON INSURANCE COMPANY
v.
STATE FARM MUTUAL INSURANCE COMPANY and Jefferson Insurance Company of New York.
No. CA-0136.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1983.
*908 Michael K. Springmann, Dillon & Cambre, New Orleans, for appellant.
Melvin W. Mathes, A.J. Schmitt, III, Beard, Blue, Schmitt, Mathes, Koch & Williams, New Orleans, for appellee.
John Robert Sarpy, Porteous, Toledano, Hainkel & Johnson, New Orleans, for appellee.
Before GULOTTA and BYRNES, JJ., and G. WILLIAM SWIFT, Jr., J. Pro Tem.
GULOTTA, Judge.
Audubon Insurance Company (Audubon) appeals from the dismissal of its claim in subrogation for reimbursement of policy benefits paid to its insured for fire loss. We affirm.
On December 3, 1979, a fire damaged a dwelling owned by Mr. and Mrs. Patrick Adams, Sr. and occupied by their son Patrick Adams, Jr. Audubon, the homeowner's insurer of the dwelling, paid the policy limits of $24,000.00 to the owners for the loss, and thereafter filed the instant suit against State Farm Mutual Insurance Company and Jefferson Insurance Company of New York, the liability insurers of Adams, Jr., alleging that Adams, Jr.'s negligence had caused the fire. The judge dismissed Audubon's suit, based on findings that the cause of the fire was undetermined and that no proof of Adams, Jr.'s negligence had been established.
Appealing, Audubon complains the trial judge erred in failing: 1) to admit the opinion testimony of a fireman concerning the cause of the fire; 2) to conclude Audubon had met its burden of proving Adams, Jr.'s negligence; and 3) to apply the doctrine of res ipsa loquitur.

EXPERT TESTIMONY
Audubon sought to elicit opinion evidence from Donald E. Drewes, a captain in the St. Bernard Fire Department. Although permitting this witness to testify factually regarding his response to the fire alarm and his observations of the scene, the trial judge sustained defense objections (made on three separate occasions) to opinion testimony on the cause and origin of fires.
Despite Drewes' six years experience as a firemanincluding limited on-the-scene investigation of fire origins and attendance at brief seminars on "fire technology"he had the benefit of a high school education, had not undergone any formal courses or tests in fire origins, and had never testified as an expert witness.
Recognizing that acceptance of expert witnesses is a matter within the sound discretion of the trial judge, Catalanotto v. Hebert, 347 So.2d 301 (La.App. 4th Cir. 1977), we find no abuse in this instance.

SUFFICIENCY OF EVIDENCE
The circumstances surrounding the fire, as set forth in the trial judge's well-written "Reasons for Judgment", in pertinent part, are as follows:
"On the date in question, Patrick Adams, Jr. came home from work between 5:30 and 6:00 p.m., and as he did on a daily basis, he drove his motorcycle into the garage and locked the garage door. At approximately 8:00 p.m., fire erupted in *909 the garage causing extensive damage to the home....
As per testimony of Patrick Adams, Jr., it was determined that his usual procedure was to park the motorcycle in the garage, and that the owner of the home, his parents, were well aware of this matter and had no objection thereto. He further contends that he was not negligent in any manner whatsoever. That after parking the motorcycle in the garage on this particular date, he turned off the fuel valve and went inside and did not know that anything was wrong until 8:00 p.m. when he heard an explosion and fire erupted in the garage, and he and his family had to flee for their lives.
The court heard expert testimony from Harold Meyers who qualified as an expert in the field of mechanical engineering with a special expertise in the origin and causes of fires. Mr. Meyers testified that he did an investigation of the fire on December 3, 1979. He did not find any problems with any of the appliances and saw nothing that was defective. He came to a conclusion as to the origin of the fire, but indicated that he had no specific evidence to back up his conclusion. Mr. Meyers testified that what probably happened was that there was a fuel leak in the bike and that the bike was parked within a short distance of the freezer. Mr. Meyers testified that it was more probable than not that fuel leak from the bike was the cause of the fire. However, he could not testify whether or not the fuel valve was left open or was opened at the time of the fire, and that he based his conclusion on what was told to him, but that he could not give his opinion as to what really did cause the fire.
Based on the testimony of Mr. Meyers and the testimony of the other witnesses, the court could not determine the cause of the fire, and the court did not find that any proof of negligence was found on the part of Patrick Adams, Jr. Mr. Meyers spoke about the possibility of a flash-back fire caused by the interaction from the fuel from the motorcycle which was apparently four feet away from the freezer in the garage, but again, could not establish the cause of the fire, therefore, the court denied the request of Audubon Insurance Company and ruled for the two defendants."
Relying on expert Meyers' testimony that the fire was caused by leaking motorcycle fuel ignited by an electrical spark in the nearby freezer, plaintiff contends it satisfied its burden of proving Adams, Jr.'s negligence through circumstantial evidence. We disagree.
Adams, Jr. testified that during the daily operation of his motorcycle for seven months prior to the fire he had never noticed any fuel leaks. Upon parking his motorcycle in the garage at 6:00 p.m. on the night of the fire, he stated he had turned the gas valve to the "off" position. About an hour before the fire, he had gone to the utility room in the garage and had not noticed the odor of any vapors or gasoline. Furthermore, after the explosion and while the fire was in progress before he evacuated, he saw fire in the roof and two walls of the garage but no flames on the motorcycle itself or any indication that fire "was shooting back" to it. Adams, Jr. further testified that the fuel valve was "closed" and "still operable" after the fire.
Although Meyers' testimony is supportive of Audubon's claim, his theory of the origin of the fire presupposes that the fuel valve was left open by Adams, Jr. or that there existed a fuel leak.
The value of an expert witness' opinion depends on the existence of facts on which it is predicated. State, Dept. of Highways v. Beaird-Poulan, Inc., 292 So.2d 842 (La.App. 2nd Cir.1974), amended and affirmed, 305 So.2d 505 (La.1975). For an expert opinion to be valid and to merit much weight, the facts on which it is based must be substantiated by the record. Prejean v. Trinity Universal Insurance Company, 210 So.2d 395 (La.App. 3rd Cir.1968), writ refused 252 La. 476, 211 So.2d 334 (1968).
*910 On the basis of Adams, Jr.'s testimony, the trial judge apparently concluded that Adams, Jr. closed the fuel valve when he parked the motorcycle. Having so concluded, he undoubtedly gave little weight to Meyers' opinion of the origin of the fire. Indeed, this expert testified that if the valve of the fuel tank had been in an "off" position at the time of the fire, he "wouldn't know what started the fire."
The evidence considered, we find no error in the trial judge's conclusion.

RES IPSA LOQUITUR
We likewise reject Audubon's argument concerning the failure of the trial judge to apply res ipsa loquitur.
This doctrine is merely an evidentiary rule creating an inference of negligence. Walter v. Union Oil Mill, Inc., 369 So.2d 1043 (La.1979). If the doctrine is applicable and the evidence inferentially suggests the defendant's negligence as a more plausible explanation, the burden of proof shifts to the defendant to show freedom from negligence. Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir. 1981), writ denied, 404 So.2d 277 (La.1981).
Assuming Meyers' theory of the origin of the fire raised an inference of Adams, Jr.'s negligence, this inference was overcome by Adams, Jr.'s testimony that he closed the fuel valve on the motorcycle, which was accepted by the trial judge. Based on this credibility determination, we find no error.
The judgment is affirmed.
AFFIRMED.