GOTHARD, Judge.
The present appeal arises out of an action for declaratory judgment commenced by Ronald L. Brignac, individually and in his capacity as managing general partner of Feliciana, a Louisiana Partnership in Commendam, Lawrence J. Derbes, and John J. Derbes (appellants) to have the trial court interpret Article 7 of their partnership agreement. Named as defendant was Carl J. Eberts (appellee). The trial court ruled in favor of the appellee’s interpretation, hence this appeal.
The disputed portion of the partnership agreement is contained in Article 7, and reads as follows:
(f)(i) If any General Partner defaults in a payment of his capital contributions as a General Partner, the other General Partners including the Managing General Partner shall have the option (exercisable within 15 days of such notice of such default has been given) to purchase the Partnership interest of the defaulting General Partner by paying the remaining unpaid installments owing to the Partnership by the defaulting General Partner. If more than one General Partners desires to purchase such interest as hereinabove permitted, and they are unable to agree as to the apportionment of such interest, each purchaser shall be entitled to purchase that portion of such interest as in the same proportion to the entire residual interest of such Partner as identified in Exhibit “B” is to the total residual interest of all purchasing partners. Purchasing General Partner or General Partners shall be entitled to all of the rights and subject to all of the obligations of the defaulting General Partner in respect to the interest so purchased. (Emphasis supplied.)[1]
A review of the events that led to the dispute indicates that the parties to this action became general partners of the Feli-ciana Partnership in Commendam by written partnership agreement dated May 22, 1981. Ronald Brignac was named the managing general partner. Beginning in April, 1986, the partnership began experiencing a monthly operating deficit. Mr. Brignac as managing general partner made cash calls on each of the parties to this action to fund their proportionate share of the monthly *1323 deficits, which Mr. Eberts refused. Mr. Brignac and the Derbeses filed suit against Mr. Eberts on November 13, 1986, asserting that Article 7(f)(i) of the partnership agreement authorized them to buy out Mr. Eberts’ partnership interest by paying his unpaid share of the cash calls which amounted to the sum of $34,046.
Mr. Eberts responded that the buy out option set forth in Article 7(f)(i) does not apply to the obligation of the general partners to fund any operating deficits of the parthership. Rather, he argued, that the option applies only to a general partner who fails to timely pay the capital contribution required of him in the installments as called for in “Exhibit B” of the partnership agreement, which he had paid.
The law and the jurisprudence provide that although the courts are bound to give legal effect to contracts according to the true intent of the parties to the contract, that intent must be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences. Moreover, when a clause of a contract is clear and unambiguous, the letter of it should not be disregarded under the pretext of pursuing the spirit. LSA-C. C. arts. 2045, 2046. Maloney v. Oak Builders, Inc., 235 So.2d 386 (La.1970).
We find no ambiguity in the words of the disputed portion of the agreement. The pertinent sections of Article 7 are as follows:
Section 7(a) reads that: the “Partners have contributed capital, in cash, to the Partnership in the amounts set forth opposite their respective names in Exhibit 'B’ hereto. No Partner ... shall be required to make any further contributions of cash or of property ... other than the capital to be contributed by Carl J. Eberts as a General Partner and the capital to be contributed by each class A Limited Partner pursuant to paragraph 7(b) and those contributions that from time to time might be required ... to pay current operating expenses of the Partnership or meet its other obligations in a timely fashion.”
Section 7(b) reads that: Mr. Eberts and each class A limited partner “shall contribute capital, in cash ... in installments in the amounts ... [and] becoming due ... as set forth in said Exhibit ‘B’.”
Section 7(f) reads that: if Mr. Eberts or any class A limited partner “fails to pay any installment of his capital contribution when due ..., he shall be in default ... [and] the interest of the defaulting Partner may be purchased [by the Partnership] as follows ... [in section] (i).”
Section (i) reads that: “[i]f any General Partner defaults in payment of his capital contributions ... the other General Partners ... have the option ... to purchase ... [his] Partnership interest ... by paying *1324 the remaining unpaid installments owing to the Partnership.”
The testimony is undisputed that Mr. Eberts has not failed to timely pay any installment of his capital contribution. Accordingly, and from our review of the evidence, the trial court was correct in determining that the option to purchase Mr. Eberts’ share of the partnership could not be exercised absent such default.
Nevertheless, appellants argue in this appeal, that such a conclusion violates the true intent of the partnership agreement and leads to absurd consequences, in that it leaves the partnership without any remedy against those partners who refuse to timely pay their share of the financial obligations of the partnership. They contend that the agreement is ambiguous, and that this court should resolve the ambiguity by attempting to determine the true intent of the parties from the contract as a whole, and not from the literal use of one particular word in the contract. Cameron Meadows Land Co. v. Bullard, 348 So.2d 193 (La.App. 3 Cir.1977). Appellants alternatively argue that section 7(a) clearly establishes that the general partner’s obligation to pay current operating expenses is part of his obligation to contribute to capital, such that a general partner’s default as to either obligation triggers the buy out option set forth in section 7(f)(i). They argue, that the reference to “any General Partner” in the introductory phrase of section 7(f)(i) proves that the section must apply to cash calls, since the only general partner with installments of capital left to pay was Eberts.
As stated we feel the disputed portion of the partnership agreement is unambiguous and is clearly operational only when a general partner fails to timely pay the capital contribution required of him, and not cash calls. We think the phrase “installment of capital contribution” in section 7(a) does not also mean cash calls for monthly operating deficits, as appellants argue. Nor does the insertion of the words “any General Partner” in respect to default in payment of installments of capital contribution, cause the buy out option in section 7(f)(i) to be activated by default in payment of cash calls for operating deficits. That the section is made applicable to “any General Partner” who defaults on his capital contribution, albeit Mr. Eberts was the only general partner with capital left to pay, cannot thereby expand the buy out option to encompass default on cash calls for current operating deficits. Moreover, were we to interpret the provision as appellants argue, then the partnership interest of any general partner could be bought out for a price equal to his pro rata portion of one month’s operating expenses, regardless of his initial capital investment. Such an interpretation cannot be deemed reasonable or grounds for interpreting the agreement other than as written in pursuit of its true intent.
The interpretation of a contract is a question of fact, not of law. Upon our review, we hold the trial judge ruling in favor of the appellees interpretation of this partnership agreement is correct.
AFFIRMED.

. Exhibit B reads:
EXHIBIT B
FRT.TCTANA. A LOUISIANA PARTNERSHIP IN COMMENDAM
Column Column Column 1 2 3
Aggregate Capital Contribution Capital Contribution Due when partnership formed Capital Contribution due 11/1/81 Capital Contribution due 5/1/82 % Interest in Profits & Losses % Interest in Cash Flow % Residual Interest
MANAGING GENERAL PARTNER
Ronald L. Brignac 50.00 50.00 0.50% 12.02% 12.02%
4429 Pike Drive
Metairie, LA 70003
*1323 Aggregate Capital Contribution Capital Contribution Due when partnership formed Column Column Column 1 2 3 Capital Contribution due 11/1/81 Capital Contribution due 5/1/82 % Interest in Profits & Losses Vo Interest in % Resid-Cash ual InFlow terest
GENERAL PARTNERS
Lawrence J. Derbes 109 Mulberry Drive Metairie, LA 70005 100.00 100.00 10.00% 17.20% 17.20%
John J. Derbes 8200 Airline Hwy. Metairie, LA 70113 50.00 50.00 11.50% 17.74% 17.74%
Carl J. Eberts 172,500.00 57,500.00 57,500.00 57,500.00 25.00% 25.00% 25.00% 3107 37th St. Suite 201