No. 8655.

35   273
111  1087

JAMES McCONNELL vs. THE CITY OF NEW ORLEANS.

Ordinances of the City Council of New Orleans recognizing the claim of an attorney, who had been employed as special counsel of the City in important litigation, and providing for part payments of his fees, interrupt prescription on the claim.

A contract couched in clear and unambiguous terms cannot be avoided as meaning a different agreement than the terms used import, and the letter of the contract must prevail, instead of invoking the remote intent of the parties.

APPEAL from the Civil District Court for the Parish of Orleans. *Houston*, J.

---

*Sam'l P. Blanc* for Plaintiff and Appellee.

*Chas. F. Buck*, City Attorney, for Defendant and Appellant.

---

The opinion of the Court was delivered by

POCHÉ, J.   Plaintiff seeks by this suit to enforce payment of the amount due him by the City of New Orleans as compensation for his services as her attorney in the defense of numerous suits of immense magnitude, all growing out of the celebrated " Gaines case."

The amount claimed is $60,263.30, subject to a credit of $2,500 paid to him in the year 1881, and the City appeals from a judgment in favor of plaintiff for the full amount of his claim.

The plea of prescription of three and of ten years, set up in the lower court is virtually abandoned on appeal, and could not have been maintained under the evidence in the record, which exhibits numerous ordinances of the City Council, recognizing the claim of plaintiff for fees due him in the " Gaines case," and making provision for the partial payments of the same.

In point of fact, a correct interpretation of the last ordinances of the City Council on the subject of plaintiff's claim would justify the conclusion that nothing is left for judicial action in this case but the pecuniary value of his services, which have never been fixed in any agreement or contract with the City Council.

By an ordinance of the Council designated as No. 7220, passed in July, 1881, it was resolved :

" *That the sum of twenty-five hundred dollars ($2,500) be and the same is hereby appropriated to James McConnell, Esq., on account, for professional services rendered in the Gaines case, as detailed in his letter of June 16, 1881 ; provided that the* AMOUNT OF SAID INDEBTEDNESS *shall be hereafter determined* by two competent experts without delay, one to be selected by the mayor of the City of New Orleans, and the other by the said McConnell, and in the event of their failing to agree, said experts to select an umpire whose decision shall have the force of the thing adjudged between the said parties; and the administrator of public accounts warrant· on the administrator of finance in payment of this appropriation whenever there shall be money in the City treasury to the credit of the proper fund and not otherwise appropriated."

This ordinance was amended on January 24th, 1882, by an ordinance designated as No. 7580, as follows :

" *Be it resolved, that Ordinance No. 7280 be so amended that, in lieu of the appointment of experts as therein provided, the* AMOUNT OF SAID INDEBTEDNESS *shall be determined judicially without delay.*"

In the case of an ordinary litigant, we would unhesitatingly confine the issue to an examination into the value of the services rendered by plaintiff, but in the case of a corporation like the present defendant, we have deemed it our duty to consider and to pass upon the defenses which are found in the City's answer.

1. It is urged that all the compensation which plaintiff is entitled to has been determined in an authentic contract passed on the 12th of February, 1866, between the City and plaintiff and his associate, the late Hon. Miles Taylor, in which they were retained as the counsel of New Orleans, to represent and defend the City " in all suits instituted

by Myra Clark Gaines, wherein the City stands in the relation of war-rantor of the defendants, or a party," and in which contract they sti-pulated a final compensation of twenty-five thousand dollars.

The services claimed for in this suit were rendered in suits not pending at the date of the contract, and in matters which originated after final decision had been rendered in the suits which were pending at the date of the contract, and which, in our opinion, were obviously the only suits contemplated by the contracting parties.

It would indeed be a very strained construction which would have bound these attorneys as counsel for the City in all suits which could in the early or in the remote future grow out of a litigation of such a magnitude as to involve the titles of countless homes in and around the City of New Orleans.

On this point the evidence is simply overwhelming against the posi-tion assumed in this defense. The numerous ordinances adopted in the Council from the year 1869 to 1882, touching the employment of plaintiff as the attorney of the City in these cases, and providing for his future compensation, are in themselves a complete refutation of the City attorney's argument on this point.

2. It is next urged that the item of $15,000 claimed for services rendered in what is termed the "probate suit," cannot be allowed, for the reason that plaintiff had agreed to make no extra charge for that suit "except in the contingency that the Supreme Court of Louisiana shall decide that case against Mrs. Gaines and in favor of the City of New Orleans," and that such a stipulation meant the contingency of a successful termination of the suit, and that the contingency was de-feated by a judgment in favor of Mrs. Gaines rendered by the Supreme Court of the United States, on error from the State Supreme Court.

While it is true that no one, including plaintiff, ever imagined at that time the possibility of a federal court assuming jurisdiction in probate matters, and that a decision in this Court on such a question might have been reasonably contemplated as final by the Council, as well as by their attorney, yet we see nothing ambiguous in the stipu-lation which would require judicial interpretation in face of the clear language used in the agreement.

If considered of doubtful meaning by the City authorities, the stipu-lation should have been explained by testimony showing a contempo-raneous interpretation of the agreement as a test of the intent and meaning of the parties to the contract. No such evidence has been introduced by the defense. On the other hand, plaintiff in his testi-mony says emphatically that he meant precisely what he said, and limited the contingency to a judgment of the Supreme Court of the State of Louisiana, and that the language was so used purposely, be-

cause he was not willing to take the risk of a writ of error to the Supreme Court of the United States.

We think that the point is not sustained by either the evidence, the law or reason.

3. There is no force in the objection that the judgment in this case could not be executed but from the revenues of the year or years during which his services were rendered.

We are not now concerned with the mode of executing the judgment which we may render in the case.

The issue must be confined to the liability of the City to compensate plaintiff for the services on which he bases his claim. The evidence satisfactorily shows the immense scope and value of the services rendered by plaintiff in the "Gaines case," and fully justifies the judgment rendered in his favor by the lower court.

An enumeration of the details of those services, and of the amount claimed for each separate suit or matter, would serve no useful purpose, and would drag this opinion to a length somewhat proportionate to the twelve bound volumes of closely printed matter making up the records in the various suits growing out of the "Gaines case."

The judgment of the lower court is correct, and is, therefore, affirmed with costs.

Bermudez, C. J., takes no part.